Allen, J.
In the year 1841 Thomas Payne of Greenesville county, being greatly embarrassed, and having left the state, the appellant, who had advanced money to and incurred liabilities for him, went in search of him, and meeting him in Baltimore, an arrangement was made between them, out of which this *520 controversy has arisen. Payne executed to the appellant two instruments, both bearing date on the 1st day of December 1841, and acknowledged before two justices of the peace in the city of Baltimore on the next day. Both instruments were lodged in the clerk’s office for Greenesville county at a quarter to 5 o’clock on the 6th of December 1841, and admitted to record. One of these instruments is a power of attorney from Payne to the appellant, authorizing the latter to collect all moneys due to his principal, placing the appellant in possession of all his effects, real and personal, with power to sell the same publicly or privately, for cash or on credit, and empowering the appellant to pay all debts or claims which might be presented against him; and further authorizing the appellant, out of the proceeds of any sales he might make, first to pay and discharge all claims where the appellant might be his security or endorser, as well also as such as he then owed the appellant or such as he may have assumed the payment of.
The other instrument is a deed of trust from Payne to the appellant as trustee, to secure sundry creditors therein named in the first place, and then all other such claims as should be presented to the appellant against the grantor. The deed conveyed a tract of land known as Bonner’s, sundry slaves, all his horses, amongst them a horse named Wellington, the stock, corn, provisions, &c. on his plantation, some slaves in Alabama, and his interest in the slaves sent to the south and sold or to be sold by John M. Rives. Amongst the creditors named, the appellant appears from the recitals in the deed to have been liable as endorser for the debts due to Peyton Mason, to Francis Epps, to Sturdivant & Hurt, and to Hurt, Patterson & Wills, whose debts, with interest to the 1st January 1842, amount, according to the commissioner’s report, to two thousand seven hundred and ninety-three dol *521 lars and forty-nine cents. The debts for which it does not appear from the deed, that he was responsible, amount, according to the report, to seven thousand six hundred and sixty-two dollars and thirty-three cents. All these debts were by the deed placed on an equality and to be first paid; and the private debt to the trustee for cash advanced or debts assumed and any other debts for which he might be liable as endorser of Payne, if there were any such debts, would be postponed until the preferred creditors were. satisfied.
It does not appear from the record that the creditors of Payne had any notice of the execution of the deed of trust, that any negotiation had preceded the execution thereof, or that they were consulted in relation thereto. All that the record discloses in regard to this matter, is the statement of the appellant in his answer, that as he was about to leave Petersburg to look for Dr. Payne, who was said to be somewhere in the north, he was accosted by E. Townes, one of the appellees, and induced to accept his claims against Payne, to try and have them adjusted; that he took them to do the best he could with them, although he himself was so largely involved for Payne. That he made several trips to the north, incurred several hundred dollars additional expense in finding Payne, whom he afterwards met with in Baltimore. That Payne then readily undertook to secure him; and with the hope of doing so, executed the power of attorney and deed of trust; the interest of the said appellee Townes being placed on an equal footing with the claims which the appellant was bound for as security. Upon this state of facts the question arises, What was the effect of these instruments executed under the circumstances aforesaid; and what rights did the appellant acquire under them? The two instruments were executed at the same time and acknowledged on *522 the same day. By one the appellant is constituted attorney in fact, by the other trustee. Both refer in a great measure to the same property. In my view of this transaction, it is unnecessary to determine whether the power of attorney in this case was revocable in the life time of the principal or not; there has been no attempt to revoke it unless the deed of trust is to have that effect; and to give it such effect would, it seems to me, do violence to the intention of .the parties. The appellant was the confidential friend, as well as the security and individual creditor of the debtor; he alone seems to have been active in seeking out the debtor for the purpose of procuring some indemnity for himself and other creditors. It was natural that he should seek for, and that the debtor in consideration of the burden he was assuming, should agree to give him some priority over other creditors: And that appears to me to be the effect of the two instruments. Executed under the circumstances disclosed by the record, they should be construed together as one instrument; and so interpreted as to give effect to the obvious intent of the parties. That it was the intent of the parties to give the appellant the preference which the power of attorney secures, is fairly to be inferred from the circumstances, adverted to; and it would be unreasonable to suppose that Payne contemplated a revocation by the deed of trust. The conduct of the parties would be inexplicable upon that supposition. They intended that both instruments executed at the same time should be operative ; and construing them together, the property of the debtor would be applied first to the debts due to or assumed by French and those for which he was bound as security; secondly, to the debts specified in the deed, except those for which the appellant was bound; and thirdly, to the general creditors. But the appellant by his answer admits that in taking the *523 deed of trust, the interest of the appellee E. Townes was placed on an equal footing with the claims for which the appellant was bound as security; andas all the enumerated debts are placed on the same footing by the deed of trust, they are all equally entitled to the benefit of the admission contained in the answer : And this circumstance reconciles the apparent incongruity between the two instruments. The power of attorney secured a preference as well for the debts for which he was liable as security, as for the individual debts. But in drawing the deed of trust, that preference as to security debts was waived ; otherwise there would have been no necessity for naming them in the deed of trust; but the individual debts not being enumerated in the deed, were left to be paid in the order prescribed by the power of attorney.
The intention of the parties and the contract to be implied from that intention as deduced from the two instruments, having according to the admissions of the answer, been modified so far as respects the security debts, it was not in the power of the appellant after-wards to enlarge his rights by selling the land known as Bonner’s as attorney in fact and not as trustee: And the enumerated creditors have the right to participate in the proceeds of the land as well as the residue of the trust fund. According to this view the appellant should be charged with the whole amount received or collected by him out of effects of Payne not embraced in the deed of trust, together with the proceeds of the trust fund, and credited with the amount then due to him or the payment of which he had assumed, and has actually discharged. The residue should be applied to the debts enumerated in the deed of trust.
It appears from the commissioner’s report that the balance due to French on private account was three hundred and eighty-six dollars and sixty-one cents. *524 The account as settled shows upon its face that all the items of the private account are charged after the 1st of December 1841. There is no exception to the report, and the charges may have been for payments assumed by him at or before the date of the power of attorney. But as there must be a recommitment of the report, leave should be given to exhibit the facts in regard to these credits.
Treating the power of attorney and the deed of trust as one instrument, and construing them together, no question can arise under the registry laws. The appellant being a party to each cannot allege any defect in the recordation, if one existed, and the other creditors claiming the benefit of his act and thereby recognizing his agency, are equally bound with him, and the rights of all are to be deduced from both instruments viewed as one transaction, to w'hich all were parties directly or through their agent.
Another objection to the decree arises out of the transactions of the parties respecting the horse Wellington. It appears that Payne on the 8th of October 1841 executed to the appellees Edmund Townes, William Townes and James Williamson, his single bill at twelve months for four thousand dollars, being for the price of the horse sold to him by said appellees. This was one of the debts enumerated in the deed of trust. The bill alleges that after the execution of the deed, and the appellant had taken possession and disposed of most of Payne’s property, they took of him this horse, his value having been much impaired by bad management whilst in Payne’s possession, and agreed to credit the four thousand dollar bond by three thousand five hundred dollars, reducing their/debt to five hundred dollars. This they did, not because they thought the horse worth anything like that sum, but because they were informed by the appellant that matters were turning out badly.
*525 The appellant in his answer, avers that Edmund Townes purchased of him as trustee the horse at the price of three thousand five hundred dollars, and instead of paying the money to him, a credit was entered on the note. That at that time he was not fully informed of the condition of the effects conveyed to him or the debts to’be paid; and he admits that he did believe at that time, there would be that sum due to the holder of the note. And he insists that the said appellees should be required to refund the excess of the three thousand five hundred dollars over the pro rata proportion they would have been entitled to receive on the note for four thousand dollars out of the trust fund. The horse was resold on the 14th December 1841, and a credit of that date entered on the note for three thousand five hundred dollars; and the bill of sale given by the appellant to said appellees recites that the price of the horse was endorsed as a credit on the note.
The fair inference from the pleadings and exhibits, confirmed by the admission of the appellant before the commissioner, though partially retracted, is, that the purchase of the horse was made, and the price of three thousand five hundred dollars agreed on, under the impression that the amount would be allowed to go as a credit on the bond. The appellant, in his answer, states that he believed .at the time that there would be that sum due to the holder of the note; and it is fair to presume the impression was created in part by his own representations. It would not, under such circumstances, be just to said appellees to hold them responsible for the price agreed to be allowed under such circumstances. Both parties acted under a mistake. The trustee was in error as to the value of the trust fund and the amount of charges upon it, and the appellees dealt with him for a portion of the trust property, knowing it to be such, under the mistaken *526 impression that they would be entitled to as much as the price they agreed to pay. The sale at this conjectural price should be disregarded in the settlement of the trustee’s account, and the trustee should be charged with the actual value of the horse at the time ' of the repurchase by the appellees, and the appellees should be allowed their pro rata share of the whole debt of four thousand dollars, charging them with the actual value of the horse, as so much received by them out of the trust fund on account of said debt: And if the sum so received exceeded their proportion, they should be required to refund the excess for the benefit of the other creditors secured by the deed.
The questions as to the construction of the instruments and the liability of the appellant for the price of Wellington, and the obligation of the said appellees to refund, are presented by the pleadings and proofs, and no exception to the master commissioner’s report was necessary to raise them for adjudication. '
Some other errors are assigned relating to particular items of the commissioner’s report, and in regard to matters which may have been influenced by extraneous evidence; and there being no exception to the report, they cannot properly be noticed here. Of this description is the charge against the trustee of two thousand five hundred dollars for the Bonner land. The commissioner states, and the deposition of Avent returned with and referred to in the report, proves, that the appellant received one thousand five hundred dollars in cash and a check on bank, and took from Avent the purchaser a bond on the Merritts for one thousand and sixty-six dollars, in payment of the residue of the balance of the price. That the appellant was told offsets were claimed by the obligors, and the appellant took the bond without recourse: and the commissioner states that the bond was in suit. The land was sold for upwards of two thousand six hun *527 dred dollars, but tbe commissioner has charged the trustee with two thousand five hundred dollars; the parties considering that a fair price for the land, Avent having resold it on the same day for that sum. If the trustee received a bond in payment without recourse, it might have been a question whether he was not chargeable for the nominal amount. But the parties themselves, according to the commissioner’s statement, considered the sum of two thousand five hundred dollars a fair price for it; and the sale by Avent shows that it was; and the trustee has made no objection to the price charged, though he insists upon his right to apply it under the power of attorney to the debts for which he was liable. I think he was properly charged with this sum.
So in regard to the objection that Simmons did not prove his debt. The deed acknowledges the debt to be about one thousand dollars. The commissioner took the amount from the deed, as he was bound to do in the absence of any proof of payment. But he says he was informed by the appellant, that probably a large portion of the debt would be received from another source. There does not appear to have been any doubt of the existence and amount of the debt; and no payment being proved, he could do no less than report it. But as all the parties interested in the trust fund, the appellees as well as the appellant, have an interest in reducing the amount of the debts to be charged upon it, leave should be given to reduce the debt by showing any payment. As the case must go back and be recommitted for other purposes, no delay will be occasioned thereby.
The remaining errors assigned, that the suit of Allen v. Townes had not been decided, and that the decree erroneously stated the pleadings, are not objections of which the appellant could complain. It would have been more regular to require the appellant to *528 pay the money to a receiver, to abide the event of the suit referred to, and to give leave to the creditors entitled to the fund to apply for their portions thereof, if the recovery of the debt by Allen should be entirely defeated.
As to the pleadings taking the bill for confessed as to Darden who had filed his answer, he has not complained, and the decree upon his claim conforms to the allegations of his answer; he is allowed to come in upon the trust fund for the whole amount of his debt, and that was all he asked. I think there was no error in the decree for which it should be reversed at the instance of the appellant, except in the refusal to allow him a credit for the whole amount of the individual debt due to him by Thomas Páyne on the 1st December 1841, or the payment of which he had assumed for said Payne on or before that day, and which he shall have actually discharged; and in failing to dispose of the price or value of the hofse Wellington as above indicated. For these errors I think the decree should be reversed, and the cause be remanded.
The other judges concurred in the opinion of Allen, J.
Decree reversed.